```
IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

RALPH O. KERNS and
MARY JANE KERNS,

        Plaintiffs,

v.               //    CIVIL ACTION NO. 1:10CV23
                                (Judge Keeley)

RANGE RESOURCES -
APPALACHIA, LLC,

        Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS [DKT. NO. 13]**

**I. INTRODUCTION**

Pending before the Court is the motion to dismiss of the defendant, Range Resources - Appalachia LLC ("Range"). For the reasons that follow, the Court concludes that no contract was formed between Range and the plaintiffs and **GRANTS** Range's motion to dismiss (dkt. no. 13).

**II. FACTUAL BACKGROUND**

This case arises from oil and gas leasing negotiations between the plaintiffs, Ralph O. Kerns and Mary Jane Kerns ("the plaintiffs"), who own approximately 207 acres of land in fee simple in Monongalia County, West Virginia, and Range. As part of these negotiations, which occurred in 2008, Range provided the plaintiffs with unsigned copies of an Oil and Gas Lease, an Addendum to the Lease, a Memorandum of Oil and Gas Lease, a "Dear Property Owner"

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS [DKT. NO. 13]**

letter ("DPO letter"), and a Request for Taxpayer Identification Number.[1] On September 5, 2008, the plaintiffs signed and returned these documents to Range. They now assert that by signing these documents they made a contractual offer to Range. See Pl.'s Compl. at p. 2.

On November 11, 2008, Range wrote to the plaintiffs ("the November 11th letter") advising that, due to "the drastic drop in oil and gas prices, the downturn of the U.S. economy and the resulting effects on the credit markets," Range's senior management had not approved the plaintiffs' proposal. See November 11th letter (dkt. no. 3-1 at 33). In pertinent part, however, Range also stated:

> As an alternative, if you remain interested in leasing your property:
> 
> - Range would consider entering into a five (5) year term delay rental lease with a lease date commencing in early 2009.
> - Upon your execution of such a lease, Range would tender 20% of the consideration provided for in the Proposed Lease.

---

[1] The plaintiffs attached these documents to their complaint. Accordingly, the Court may consider them without converting Range's motion to dismiss to a motion for summary judgment. See Sec'y of State For Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

> - The lease would provide for four (4) annual delay rental payments with each payment equaling 20% of the consideration provided for in the Proposed Lease.
> - Range would still need to verify your title to the oil and gas rights under the lands described in the lease, which Range would expect to complete by the lease date.
>
> This alternative offers you the potential of realizing the same total consideration that you would have been paid if the Proposed Lease had been accepted, does not alter the other terms and provisions of the Proposed Lease, and allows Range the opportunity to develop your oil and gas resources. . . .
> If you are interested in leasing your property to Range under the above terms, please sign and return one copy of this letter to Range in the enclosed pre-paid envelope. If you have any questions concerning Range's proposal, please contact us at (412) 697-2643. **This proposal will remain open until December 31, 2008.**

Id. (emphasis in original).

After they received the November 11th letter, the plaintiffs signed it and returned it to Range. They contend that the letter was an "alternative proposal counteroffer" from Range which they accepted, thus forming a contract. See Pl.'s Compl. at ¶ 6.

Months later, on June 4, 2009, Range sent a letter to the plaintiffs' attorney, Samuel Spencer Stone, stating:

3

> Range has suspended leasing activity in West Virginia for the foreseeable future and will not be interested in pursuing a lease with the plaintiffs at the present time.

June 4th Letter (dkt. no. 13-2, at 2). According to the plaintiffs, this letter breached the leasing contract formed when they signed the November 11th letter. Range, however, argues that the November 11th letter was not a counteroffer and that the parties never formed a contract.

### III. DEFENDANT'S MOTION TO DISMISS

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient to state a plausible claim for relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 557 (2007). "The plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully. It requires the plaintiff to articulate facts, when adopted as true, that show that the plaintiff has stated a claim entitling him to relief, i.e., the plausibility of entitlement to relief." Francis v. Giacomelli, 588 F.3d 186, 193 (internal quotations omitted).

Although the Court must accept factual allegations in a complaint as true, this "tenet . . . is inapplicable to legal

conclusions." Id. at 1950. Thus, a complaint may be dismissed when the facts alleged clearly demonstrate that the plaintiff has not stated a claim and is not entitled to relief. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 344-45 (3d ed. 2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1949 (citation omitted).

**A.   The Plaintiffs' Breach of Contract Claim**

Range contends that the plaintiffs' claim for breach of contract fails because Range and the plaintiffs never formed a contract. Even if a contract was formed, however, Range further contends that conditions precedent to performance have not yet taken place. The Court need not address the latter issue because, as discussed below, it concludes that no contract was formed under West Virginia law.

   **1.   West Virginia Law Governs the Question of Contract Formation**

Pursuant to Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), the applicable law in a diversity case such as this is determined by the substantive law of the state in which a district court sits.

This includes the forum state's prevailing choice of law rules. See Klaxon Co. v. Stentor Electic Mfg. Co., 313 U.S. 487, 496-97 (1941). In West Virginia, "[t]he law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation in the courts of this state." See Syl. Pt. 3, Howe v. Howe, 625 S.E.2d 716, 717 (W. Va. 2005) (internal citations and quotation marks omitted). The parties, however, may defeat this general rule "by making a choice of law in the contract." Nadler v. Liberty Mut. Fire Ins. Co., 424 S.E.2d 256, 261 (W. Va. 1992).

In this case, the negotiations between the plaintiffs and Range took place in West Virginia. Additionally, the parties contemplated contract performance in West Virginia. Moreover, no choice of law provisions are at issue in this case. Thus, the substantive law of West Virginia governs whether the parties formed a contract. See Syl. Pt. 3, Howe, 625 S.E.2d at 717.

**2. The Law of Contract Formation in West Virginia**

Under West Virginia law, contract formation requires an offer, acceptance of the offer, and consideration supporting the agreement. See First National Bank v, Marietta Mfg. Co., 153 S.E.2d 172 (1967). "[M]utuality of assent is an essential element

of all contracts." Id. (citing Wheeling Downs Racing Ass'n v. West Virginia Sportservice, Inc., 216 S.E.2d 234 (W. Va. 1975)). "In order for this mutuality to exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other." Id. In other words, contract formation requires "a complete meeting of the minds on all material matters, leaving nothing for future negotiations." Allen v. Simmons, 125 S.E. 86, 88 (W. Va. 1924).

Section 24 of the Second Restatement of Contracts defines an offer as "'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" Verizon West Virginia, Inc. v. West Virginia Bureau of Employment Programs, 586 S.E.2d 170, 205 n.11 (W. Va. 2003) (Davis, J., dissenting) (quoting National Educ. Association-Rhode Island by Scigulinsky v. Retirement Bd. of Rhode Island Employees' Retirement System, 890 F. Supp. 1143, 1157 (D.R.I. 1995) (quoting Restatement (Second) of Contracts, § 24 (1981))(internal quotation marks omitted)); see also 1 Corbin on Contracts, § 11 at 23 (1963) (defining an offer as "an expression by one party of his assent to certain definite terms provided that the other party involved in

the bargaining transaction will likewise express his assent to the identical same terms."). "An offer must be certain in its essential terms to create a power of acceptance." Charbonnages de France v. Smith, 597 F.2d 406, 417 (4th Cir. 1979) (construing West Virginia law).

In contrast, "a manifestation of willingness to enter into a bargain" will not constitute an offer if the person receiving the communication "knows or has reason to know" that the party manifesting a willingness to bargain "does not intend to conclude [the] bargain until he has made a further manifestation of assent." Restatement (Second) of Contracts, § 26 (1981). Such communications will constitute preliminary negotiations. See id.

"'Generally, the existence of a contract is a question of fact for the jury.'" Ruckdeschel v. Falcon Drilling Co., L.L.C., 693 S.E.2d 815, 820 (W. Va. 2010) (quoting Syl. Pt. 4, Cook v. Heck's Inc., 342 S.E.2d 453, 457 (W. Va. 1986). The determination of what constitutes a contract, and the application of an unambiguous writing, however, present questions of law. See Croft v. TBR, Inc., 664 S.E.2d 109, 111 (W. Va. 2008) (citations omitted); Williams v. Precision Coil, Inc., 459 S.E.2d 329, 339 n. 18 (W. Va. 1995).

Whether a writing is ambiguous also presents a question of law. Fraternal Order of Police, Lodge No. 69 v. City of Fairmont, 468 S.E.2d 712, 715 (W. Va. 1996). Contract language will usually be ambiguous "where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken." Id. at 716. Disagreement among parties over the construction of a contract, however, will not render its terms ambiguous. Id. at 717. A court must apply an unambiguous writing according to the "'plain and ordinary meaning'" of its terms. Dan's Carworld, LLC v. Serian, 223 W.Va. 478, 483, 677 S.E.2d 914, 919 (W. Va. 2009) (citing Supervalu Operations, Inc. v. Center Design, Inc., 524 S.E.2d 666, 670 (W. Va. 1999) (per curiam) (internal citation omitted)).

Pursuant to these legal principles, the November 11th letter is an unambiguous writing ripe for applying the plain and ordinary meaning of its terms. It is not, however, an offer.

### 3.  **The November 11th Letter was Not an Offer**

In determining whether the November 11th letter was an "offer" or a continuation of the parties' "preliminary negotiations," the case of Fleming Co. Of Nebraska, Inc. v. Michals, 433 N.W.2d 505

9

(Neb. 1988), is instructive.[2] In <u>Fleming</u>, an individual named Forrest R. Michals ("Michals") served as a guarantor for the debts Beer Mart, Inc. and Mike's IGA, Inc. owed to the Fleming Company of Nebraska, Inc. ("Fleming"). On September 6, 1984, Michals's attorney wrote to Fleming, stating:

> I am enclosing a copy of a Complaint that our office will file on behalf of Mike's IGA, Beer Mart, Inc., Forrest R. Michals, Sr., and Forrest R. Michals, Jr., against The Fleming Company of Nebraska, Inc. Our clients **would consider** not filing this action and giving release of the claims noted therein if they, in return, are given a complete release of all claims of The Fleming Company of Nebraska, or any related companies, who may have a claim against them.

<u>Id.</u> at 506-07 (emphasis added).

On September 27, 1984, Fleming's attorney responded to the lawyer for Michals, stating:

> This will respond to your letter of September 6, 1984 regarding the above matter. Fleming Companies, Inc. and the Fleming Co. of Nebraska, Inc. hereby accept the settlement proposal set forth in your letter. . . .
> . . .
> I will contact you early next week so that we can begin to prepare releases and any other documentation necessary to formalize the settlement.

---

[2] <u>Fleming</u>'s holding and reasoning are in accord with the common law of West Virginia and rely on well-established principles of the common law of contracts.

Id. at 507. No additional correspondence occurred between the parties until October 17, 1984, when Fleming's attorney wrote:

> Fleming Companies, Inc. and the Fleming Co. of Nebraska, Inc., hereby withdraw their counterproposal set forth in my letter to you of September 27, 1984, to settle the disputes between the parties with regard to the above matter. I have been directed by my clients to proceed to file an action against Mr. Michals on his Guaranty as soon as possible, and you should proceed accordingly.

Id.

Fleming then filed suit against Michals in Nebraska state court on October 29, 1984. Michals answered by denying default on any corporate debts, alleging antitrust violations against Fleming, and asserting that the parties had a valid settlement agreement. Id.

The trial court agreed with Michals and concluded that his letter was an offer to enter into a settlement agreement, and that Fleming had accepted that offer. It further concluded that Fleming's acceptance of this offer had resulted in the formation of a binding contract which precluded its suit against Michals. Id. at 506.

On appeal, the Nebraska Supreme Court reversed, holding that the September 6th letter was not an offer but rather an invitation

11

from Michals for Fleming to make an offer. In reaching this conclusion, the court relied on an example from the official commentary to the Second Restatement of Contracts:

> A writes B, "I am eager to sell my house. I **would consider** $20,000 for it." B promptly answers, "I will buy your house for $20,000 cash." There is no contract. A's letter is a request or suggestion that an offer be made to him. B has made an offer.

Id. at 508 (quoting Restatement (Second) of Contracts § 26, cmt. d. (1981) (emphasis added). Because Michals's letter stated that he "would consider" settling his claims against Fleming if Fleming would do the same, the court reasoned that the letter failed to place "an actual and definitive promise or obligation on Michals." Id. Inasmuch as the letter lacked a definitive promise, "Fleming could not accept a nonexistent offer," and its response to Michals therefore did not result in the formation of a contract. Id. In other words, the letter Michals wrote was not an offer, but rather an "invitation for Fleming's submission of an offer." Id.; see also Ferrero Const. Co. v. Dennis Rourke Corp., 536 A.2d 1137, 1145 (Md. 1988) (recognizing that "[a]n invitation to submit an offer is not itself an offer; the submission of an offer, pursuant to the invitation, is not an acceptance.").

In the case at bar, Range's November 11th letter stated that if the plaintiffs "[remained] interested in leasing [their] property[] Range **would consider** entering into a five (5) year term delay rental lease with a lease date commencing in early 2009." November 11th letter (dkt. no. 3-1 at 33) (emphasis added). Those words contain no "actual and definitive promise or obligation" by which Range agreed to be bound. See Fleming, 433 N.W. at 508. The letter also lacks any definitive promises or obligations from Range. Under West Virginia law, therefore, the lack of a definitive promise from Range in the November 11th letter precludes the letter from qualifying as an offer. See id.

It follows from this that when the plaintiffs received the November 11th letter from Range they could not reasonably have understood that, merely by signing and returning the letter, they could conclude any bargain. Compare Restatement (Second) of Contracts § 26, comment d. (invitation to bargain) with Restatement (Second) of Contracts, § 24 (offer). At most, Range's willingness to "consider" entering into a leasing agreement with them invited the plaintiffs to submit an offer of their own and signaled to them that further negotiations, or at least a further manifestation of assent from Range, would be necessary to conclude any agreement.

13

Accord Allen, 125 S.E. at 88 (holding that contract formation requires "a complete meeting of the minds on all material matters, leaving nothing for future negotiations."). The allegations in the plaintiffs' complaint therefore fail to state a plausible claim for breach of contract. Iqbal, 129 S.Ct. at 1949.

**B.    The Plaintiffs' Remaining Claims**

The plaintiffs also assert claims against Range for breach of the covenant of good faith and fair dealing, fraudulent misrepresentation, negligent misrepresentation, and punitive damages. These claims, however, fail as a matter of law.

**1.    Breach of the Covenant of Good Faith and Fair Dealing**

It is well settled that West Virginia does not recognize a claim for breach of the covenant of good faith and fair dealing independent of a claim for breach of contract. See, e.g., Unum Life Ins. Co. of America v. Wilson, No. 2:08CV73, 2009 WL 3617747, at *7-*8 (N.D.W. Va. Oct. 29, 2009) (Bailey, C.J.) (unpublished) (recognizing that, "[u]nder West Virginia law, a claim for breach of the duty of good faith and fair dealing is not an independent cause of action, but rather is subsumed in the claim for breach of contract."). Accordingly, because the Court has concluded that they had no contract with Range, it also concludes that the

14

plaintiffs have no independent claim for breach of the covenant of good faith and fair dealing.

### 2. Fraudulent Misrepresentation

The plaintiffs allege that Range made fraudulent misrepresentations to them regarding the work it intended to perform as well as the work that it "actually performed under the terms of the parties' contract." Pl.'s Compl. at ¶¶ 15-17. To survive a motion to dismiss, however, such a fraud claim must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990)).

Notwithstanding that the plaintiffs' claim for fraudulent misrepresentation fatally relies on the existence of a contract, their pleading of that claim also fails to satisfy the requirements of Rule 9(b). Rather than plead their fraud claim with

15

particularity, the plaintiffs have merely listed the elements of such a claim without providing any factual support for it. For example, they allege that Range "made certain representations," but they never specify the nature of those representations or state what was said. Moreover, they provide no information about when these representations were made, where they were made, or who made them. Such bare allegations fail to satisfy the pleading requirements of Rule 9(b). See Harrison, 176 F.3d at 784.

### 3. Negligent Misrepresentation

The plaintiffs' claim of negligent misrepresentation, see Pl.'s Compl. at ¶¶ 23-29, which closely mirrors their claim of fraudulent misrepresentation, fails because a non-fraud claim, including one of negligent misrepresentation, must satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a). See Baltimore County v. Cigna Healthcare, 238 Fed. App'x 914, 922 (4th Cir. 2007) (unpublished). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A claim consisting only of "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" fails to satisfy the pleading requirements of Rule 8(a). Iqbal, 129 S. Ct. at 1949.

Here, the plaintiffs' claim of negligent misrepresentation consists of mere legal conclusions. For example, their complaint alleges that Range negligently misrepresented the work it intended to perform, and the work that it "actually performed under the terms of the parties' contract." Pl.'s Compl. at ¶¶ 23-26. But there is no description in the complaint of the circumstances or details concerning how Range made such negligent misrepresentations. Because the plaintiffs have failed to provide any factual basis for their claim of negligent misrepresentation, their complaint does not satisfy the pleading requirements of Rule 8(a). See id.

**4.  Punitive Damages**

Finally, in light of the fact that all of the plaintiffs' substantive claims fail as a matter of law, it follows that their claim for punitive damages also fails because punitive damages are a form of relief rather than an independent claim. See, e.g., Miller v. Carelink Health Plans, Inc., 82 F. Supp.2d 574, 579 n.6 (S.D.W. Va. 2000) (Haden, C.J.). In Miller, the court recognized that "punitive damages" are a "a form of relief," not a cause of action. See also Berry v. Nationwide Mut. Fire Ins. Co., 381 S.E.2d 367, 373-74 (W. Va. 1989), which held that, "[g]enerally, absent

an independent, intentional tort committed by the defendant, punitive damages are not available in an action for breach of contract."

## IV. CONCLUSION

For the reasons discussed, the Court **GRANTS** the motion of the defendant, Range Resources - Appalachia, LLC, to dismiss the complaint (dkt. no. 13), **DIRECTS** the Clerk not to enter a judgment order, and further **DIRECTS** that the case be left open on the docket so that the Court may address the plaintiffs' pending motion to amend the complaint (dkt. no. 31). It further **DIRECTS** the Clerk to transmit copies of this order to counsel of record.

It is so **ORDERED**.

DATED: January 18, 2011.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE